UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDAN CHARLES PRESTON<br><br>Plaintiff(s)<br><br>v.<br><br>FIRSTCREDIT, INC. d/b/a FCI; and DOES 1 through 10, inclusive,<br><br>Defendant(s) | Civil Action No.<br><br>Jury Trial Demanded |

Brendan Charles Preston ("Plaintiff"), on behalf of himself individually, alleges as follows:

## I.     INTRODUCTION

1. This is an action for damages brought by a consumer pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

2. In effectuating the FDCPA, Congress sought to limit the tactics a debt collector could use. Despite these plain truths, Defendant (as defined herein) used inappropriate tactics to collect Plaintiff's debt.

3. Upon information and belief, Defendant used these very same tactics across the Commonwealth of Pennsylvania against hundreds, if not thousands, of individuals who, fall within the ambit of the protections of the FDCPA.

4. Absent this action, Defendant's inappropriate tactics would continue unabated.

## II.     THE PARTIES

5. Plaintiff is an adult individual citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Bucks County.

1

6. Plaintiff is a "consumer," as that term is defined and/or contemplated within the scope of FDCPA.

7. FirstCredit, Inc. d/b/a FCI ("Defendant" or "FCI") is a well-known foreign debt collection agency that regularly conducts business in the Eastern District of Pennsylvania, is engaged in the business of debt collection within the Commonwealth of Pennsylvania from 3250 W. Market St. #304 Akron, OH 44333 and may be served at P.O. Box 630838 Cincinnati, OH 45263-0838.

8. Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 10, but will seek leave to amend this complaint once their identities become known to Plaintiff. Upon information and belief, Plaintiff alleges that at all relevant times each defendant, including the DOE defendants 1 through 10, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the conduct alleged herein was in the course and scope of and in furtherance of such relationship.

9. Unless otherwise specified, Plaintiff will refer to all defendants collectively as "Defendant" and each allegation pertains to each Defendant.

10. Defendant uses instrumentalities of interstate commerce and mail in a business, whose principal purpose is collection of debts and/or regularly collects (or attempts to collect), directly or indirectly, debts owed or due or asserted to be owed or due another.

11. At all times material hereto, Defendant acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting within the scope and course of their authority and/or employment for and/or on behalf of Defendant.

### III. JURISDICTION AND VENUE

12. This Honorable Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C.

§ 1337.

13. The Eastern District of Pennsylvania is the proper venue for this litigation, because:

   a. Plaintiff is a resident of the Eastern District of Pennsylvania;

   b. Defendant maintains a business location in the Eastern District of Pennsylvania;

   c. Defendant's wrongful conduct was directed to and was undertaken within the territory of the Eastern District of Pennsylvania; and

   d. Defendant conducts a substantial portion of its business in the Eastern District of Pennsylvania.

### IV.    STATEMENT OF CLAIMS

#### A.    BACKGROUND

14. On January 18, 2020, Plaintiff was involved in a motor vehicle accident that caused Plaintiff to suffer from various physical injuries.

15. Although Plaintiff's injuries were not life-threatening, on the following day, he sought medical evaluation and treatment at St. Mary's Medical Center in Langhorne, Pennsylvania ("Provider).

16. At that time, Plaintiff was insured by a motor vehicle liability policy from Nationwide Property & Casualty Insurance Company. that provided "first party medical benefits" coverage.

17. These facts were noted in the Provider's records.

18. In April of 2020, Provider and/or Provider's affiliates submitted their bills for Plaintiff's medical evaluation and treatment to Plaintiff's motor vehicle insurer.

19. Thereafter, Provider and/or Provider's affiliates received and accepted payment

from the motor vehicle insurer, adjusted under the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 et seq.

20. On July 6, 2021, Defendant sent a letter to Plaintiff, regarding Plaintiff's alleged obligation to pay the Provider a "Balance," "Balance Due," or "AMT DUE" of $481.14 for his evaluation and treatment. A true and correct copy of this document (redacted for purposes of privacy) is marked and attached hereto as Exhibit "A."

21. At the time of Defendant's correspondence, the alleged obligation was in default.

22. Defendant's correspondence explicitly identified $481.14 as the "Balance," "Balance Due," or "AMT DUE." Exhibit "A" (capitalization in original).

23. Accordingly, Defendant's correspondence explicitly stated and/or otherwise implied that Plaintiff owed the Balance," "Balance Due," or "AMT DUE" and that Defendant was entitled to collect that amount from Plaintiff. See Exhibit "A."

24. Indeed, by sending the correspondence at issue, Defendant sought to collect the Balance," "Balance Due," or "AMT DUE" from Plaintiff.

25. In the Commonwealth of Pennsylvania, the extent of liability for the cost of treatment received for an injury incurred in a motor vehicle accident is limited by the cost containment provisions of the MVFRL.

26. The specific provision of the MVFRL, in relevant part, declares:

> [a] person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits . . . **shall not require, request or accept payment** for the treatment, accommodation, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program

>for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.

Pa.C.S. § 1797(a)(emphasis supplied).

27. This cost containment provision, commonly known as the "Act 6 Reduction," has been interpreted to mean that, "if Medicare makes any payment for a particular service, then reimbursement for purposes of automobile insurance will be limited to 110% of that amount." Hospital Association of Pennsylvania, Inc. v. Foster, 629 A.2d 1055, 1057-8 (Pa. Cmwlth. 1993); see also Pittsburgh Neurosurgery Associates, Inc. v. Danner, 733 A.2d 1279 (Pa. Super. 1999).

28. The regulations promulgated under the MVFRL in the Pennsylvania Code provide the following explanation of this directive:

>**An insurer shall apply the Medicare payment limitations of Act 6 to provider services covered by** bodily injury liability, **uninsured and underinsured motorists**, first-party medical and extraordinary medical benefits coverages under an automobile insurance policy. . . . **If no portion** of the provider's bill **is payable under automobile insurance coverage, the Medicare payment limitations no longer apply** and [a] provider may directly bill the insured or other insurance carrier as it has prior to passage of Act 6.

31 Pa. Code § 69.22(a), (h)(emphasis supplied).

29. As mandated by the MVFRL, therefore, the "Act 6 Reduction" must be applied for "an injury covered by liability **or** uninsured and underinsured benefits **or** first party medical benefits." Id.

30. The use of the conjunction "or" in the statute mandates that the MVFRL limitation must be used, so long as any of the various types of insurance benefits remain available and exhaustion or non-existence of one type of benefit (i.e., "first party medical benefits" or "liability") is irrelevant.

31. To put it another way, unless "liability," "uninsured and underinsured benefits,"

5

and "first party medical benefits" are all unavailable, a medical provider "shall not require, request or accept payment" of anything above the "Act 6 Reduction" formula. See Danner, 733 A.2d at 1279-82.

32. In the present case, Plaintiff's "liability," "uninsured and underinsured benefits," and "first party medical benefits" have not been exhausted.

33. If the Balance," "Balance Due," or "AMT DUE" relates to services and/or treatment that were already billed and paid by Plaintiff's motor vehicle insurer, then Defendant unlawfully sought to collect more than what is allowed by the MVFRL directly from Plaintiff.

34. Alternatively, if the alleged "Balance," "Balance Due," or "AMT DUE" – $481.14 – covers services and/or treatment that were not already billed and paid by Plaintiff's motor vehicle insurer, then this amount represents the total outstanding balance claimed by the Provider, without application of the Act 6 Reduction.

35. In this regard, the actual amount that the Provider is entitled to under the MVFRL is significantly less than the "Balance," "Balance Due," or "AMT DUE" stated in Defendant's correspondence.[1]

36. Neither the Provider nor Defendant have ever attempted to re-calculate the "Balance Due" to determine what the Provider may ask for or receive under the MVFRL.

37. The MVRFL explicitly forbids a Provider and, correspondingly, anyone acting on Provider's behalf, to "require, request or accept payment" of more than what the statute allows. 75 Pa.C.S. § 1797(a).

---

[1] For instance, in March of 2020, Provider requested payment of $2,283.00 from Plaintiff's motor vehicle insurer on account of treatment and services provided to Plaintiff on January 19, 2020. In April of 2020, after adjustments on the basis of the Act 6 Reduction, Plaintiff's motor vehicle insurer reduced the bill by more than 99% and paid Provider a total $8.87.

38. Section 1692f(1) of the FDCPA specifically prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

39. Section 1692e(2)(A) of the FDCPA specifically prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt. . ." 15 U.S.C. § 1692e(2)(A).

40. Section 1692e(10) of the FDCPA specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt. . ." 15 U.S.C. § 1692e(10).

41. Sections 1692f(1), 1692e(2)(A), and 1692e(10) "impose[] strict liability on debt collectors." Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3rd Cir. 2015).

42. As described herein, Defendant's actions violated the applicable provisions of the FDCPA, in that: (a) Defendant explicitly claimed that Plaintiff owed an amount that was in excess of what its client was permitted by law to collect (or even ask for) under the MVFRL; and/or (b) Defendant attempted to collect an amount that was in excess of what its client was permitted by law to collect (or even ask for) under the MVFRL.

43. It is believed and, therefore, averred that Defendant has no procedures to avoid collecting more than what is permitted under the MVFRL.

44. Further, upon information and belief, Defendant did nothing to investigate the entities or persons that hired, retained, or engaged Defendant to collect the alleged debt at issue in Plaintiff's Complaint, before first contacting Plaintiff.

45. Additionally, upon information and belief, Defendant has never made any inquiry

or otherwise investigate the legitimacy or accuracy of Plaintiff's alleged debt, before first contacting Plaintiff.

46. Defendant, therefore, could not have reasonably relied upon the information provided to Defendant about the alleged debt at issue in Plaintiff's Complaint.

47. Moreover, Defendant's reliance on the information provided by the Provider was not (and could not have been) reasonable or justified, as even a cursory review of Plaintiff's alleged obligation would have revealed that: (a) the "Balance," "Balance Due," or "AMT DUE" that Defendant was being asked to collect is the total outstanding balance claimed by the Provider, without application of the Act 6 Reduction; and (b) Defendant was being asked to collect from Plaintiff more than what is allowed under Pennsylvania law.

48. More importantly, upon information and belief, Defendant has deliberately ignored and/or willfully avoided any investigation or inquiry of the underlying debt, as well as the entities or persons that hired, retained, or engaged Defendant to collect it.

49. Yet, given the conduct at issue in this case, Defendant has failed to institute or maintain any procedures to avoid collecting amounts in excess of the Act 6 Reduction.

50. To the contrary, Defendant has continued to ignore and/or willfully disregard the applicable provisions of the MVFRL.

51. Upon information and belief, Defendant systematically and as a matter of practice, ignores the MVFRL and its Act 6 Reduction.

52. As described herein, Defendant's conduct, as alleged herein, is (and was) clearly deliberate, intentional, reckless, willful, and wanton.

53. As described herein, Defendant's conduct, as alleged herein, is unfair, misleading, deceptive, and unconscionable.

54. Plaintiff has been (and will continue to be) harmed due to Defendant's conduct, as set forth herein.

55. Plaintiff has suffered and will continue to suffer damages due to Defendant's conduct, as set forth herein.

## COUNT I
## Violation of Section 1692f of the FDCPA

56. Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

57. Defendant is a "debt collector" as that term is defined under the FDCPA.

58. An attempt to collect upon a debt incurred during the course of personal medical treatment falls within the scope of the FDCPA. See Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521 (E.D.Pa. 1996).

59. As described herein, Defendant's actions violate the applicable provisions of the FDCPA. See Hylton v. AmeriFinancial Solutions, LLC, 2018 WL 6044734 (E.D.Pa. 2018).

60. Defendant's violations with respect to its collection efforts, include but are not limited to, seeking payment of an amount in excess of what Defendant was allowed to collect, contrary to the provisions of 15 U.S.C. § 1692f(1).

61. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT II
## Violation of Section 1692e of the FDCPA

62. Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

63. Defendant's violations with respect to its collection efforts, include but are not

limited to, making false, misleading, and/or deceptive statements concerning consumer's legal obligations, contrary to the provisions of 15 U.S.C. §§ 1692e(2)(A), 1692e(10).

64. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered damages in an amount to be determined at trial.

## V. CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

(a) A Declaration that Defendant has violated the applicable provisions of the FDCPA;

(b) An Order enjoining Defendant from any further violations of the FDCPA;

(c) Actual damages;

(d) Statutory damages;

(e) Attorneys' fees and costs; and

(f) Such other relief as the Honorable Court shall deem just and appropriate.

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

Date: July 13, 2021

Respectfully submitted,
KALIKHMAN & RAYZ, LLC

_/s/ Arkady "Eric" Rayz_
Arkady "Eric" Rayz
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: erayz@kalraylaw.com

Counsel for Plaintiff